**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MARVIN DEARING,                                    Case No. 1:11-cv-204

            Plaintiff,                          Barrett, J.
                                                   Bowman, M.J.
     v.

INSTITUTIONAL INSPECTOR MAHALMA, et al.,

            Defendants.

**REPORT AND RECOMMENDATION**

**I. Background**

Plaintiff, presently incarcerated at the Ohio State Penitentiary and proceeding *pro se*, filed suit in April 2011 against nine defendants, alleging several violations of his civil rights.  Upon initial screening, some claims and defendants were dismissed.  (Docs. 13, 38).  On May 31, 2011, the Court directed service by the United States Marshal upon six individuals as to whom an Eighth Amendment claim for deliberate indifference to a serious medical need had been stated, with service to be effected "as directed by plaintiff."  Each of the six Defendants was named in both their individual and official capacities, and all were alleged to be employed at the Southern Ohio Correctional Facility ("SOCF"), where Plaintiff was incarcerated at the time of the events that form the basis of his claims.  (Doc. 15).   However, service was initially perfected on only four of the six.

After repeated efforts, a fifth Defendant, Nurse Practitioner Adkins, was served and filed an Answer through counsel on February 2, 2012. (Doc. 66).  Due to continued

issues with perfecting service on the last Defendant, Dr. McLemore, that Defendant did not appear until November 1, 2012.

Plaintiff's complaint alleges that bullet fragments remained in his neck following a 1991 gunshot wound and surgery.  He alleges that the fragments cause him chronic and severe pain, which impacts his activities and sleep. (Doc. 38 at 5, Opinion and Order, summarizing claims as stated in Plaintiff's Objections).  Plaintiff maintains that all six Defendants exhibited deliberate indifference to his serious medical needs either by delaying or by denying him medical treatment for his condition.  He seeks compensatory damages from each Defendant in the amount of $250,000.00, and additional sums of $250,000 each for both punitive damages and "emotional stress."

Based upon the late service on Nurse Adkins and Dr. McLemore, discovery did not close until January 28, 2013.  On April 1, 2013, all six Defendants moved for summary judgment.   Plaintiff filed his response in opposition to Defendants' motion on May 9, 2013, to which Defendants chose to file no reply on grounds that it would add "little to no value to the Court's ability to properly rule on Defendants' Motion for Summary Judgment." (Docs. 93, 94).

Defendants' motion argues that they are entitled to judgment as a matter of law because: 1) Plaintiff's claim for money damages against Defendants in their official capacities is barred by the Eleventh Amendment; 2) Plaintiff's claim against Defendants in their individual capacities is barred by the lack of proof of any personal involvement in the alleged Constitutional violation; and 3) Plaintiff cannot prove either the objective or Subjective elements of his Eighth Amendment claim.[1]  Having reviewed the parties'

---

[1]In what is essentially a derivative of the third argument, Defendants also contend they have provided treatment, and that Plaintiff's claims amount to no more than his subjective disagreement with the

memoranda, I recommend that Defendants' motion be granted, and that this case be dismissed in its entirety.

### II. Analysis

### A. Additional Factual Background

Plaintiff does not explain when his pain symptoms began, whether soon after his 1991 surgery to remove the bullet, or at some later point in time. Plaintiff has been housed at SOCF since September 2001. Plaintiff has submitted a health screening form to support his assertion that he has complained of chronic neck pain at least since 2002. (Doc. 93-1 at 2, Exhibit A). However, his complaint refers to a time frame beginning in September 2008, some 17 years after his original gunshot wound, and 7 years after his initial incarceration at SOCF.

As Defendants point out, the record is silent concerning Plaintiff's treatment prior to September 2008, whether Plaintiff believed that earlier treatment was effective, or what changed in September 2008 – whether treatment or his symptoms. Aside from the issue of precisely when Plaintiff contends that his medical treatment became inadequate, this Court previously determined that any claim between September 2008 and April 8, 2009 is time-barred.[2] (Doc. 9 at 4; Doc. 38 at 19). Thus, only Plaintiff's treatment following April 8, 2009 remains at issue in this case.

In any event, beginning in September 2008, Plaintiff alleges that "Nurse Wiglet," a non-party to this action, failed to provide him with adequate pain medication. During the same time period, Plaintiff alleges that Defendant Nurse Durham refused his

---

adequacy of that treatment.
[2]One of Plaintiff's primary complaints is that Defendants failed to respond to a March 19, 2008 Health Services Request, (Doc. 93-1 at 8), a date that is outside the limitations period.

request for pain medication "because she isn't a Doctor," and that she harassed him and told Plaintiff that she "hopes he dies."  (Doc. 9, Complaint at 10).  Plaintiff alleges that he filed numerous informal complaints with Health Care Administrator Clagg, who failed to take action against Nurse Wiglet and/or Nurse Durham in response.

Plaintiff admits he was "seen by the [unidentified] Doctor on 11/10/08," and was prescribed motrin.  (*Id.*).  Plaintiff submitted an informal grievance ("kite") to Nurse Durham concerning his pain, and in December 2008 "again complained about neck pain and swelling," and that the motrin was ineffective.  (Doc. 9 at 11).  Plaintiff states that Nurse Hall (another non-defendant) screened his complaint in January 2009 but did not prescribe him adequate pain medication.  He alleges that he sent requests asking to be seen by a physician on February 3, 2009 and on March 20, 2009, with no response. (*Id.* at 11-12).  On June 5, 2009, Plaintiff alleges that he filed a grievance based upon the denial of his request to see a doctor.  On June 23, 2009, Plaintiff was seen by "Doctor Boutista," another non-party.  (Doc. 9 at 12).  Dr. Boutista prescribed "800 mg. of more Ibuprofen," and on June 24, Dr. Donald Simon sent Plaintiff for x-rays.  In July 2009, Plaintiff complained to Nurse Durham that the Ibuprofen was inadequate, and she allegedly responded that she would try to provide him with a physician appointment. Nurse Hall also told him that she saw no record of his requests for physician visits in March or June 2009.  Plaintiff alleges that he gave Nurse Durham two additional requests in August 2009 and on October 5, 2009, requesting examination by a physician, but that she did not turn in his requests so he was not seen.  (Doc. 9 at 14-15).  In January 2010, Plaintiff alleges that he was examined by a physician who prescribed Naproxen, another allegedly inadequate pain medication.  (*Id.* at 15).  He

complained and turned in another health services request (HSR) on January 24, 2010 and spoke to non-party "Nurse Hill" on January 26, 2010. Plaintiff alleges that he submitted another HSR in March 2010. (*Id.* at 16-17).

On April 1, 2010, Plaintiff alleges that Defendant Adkins examined him but only ordered x-rays, and failed to treat his pain. Plaintiff alleges that the x-rays were administered by Defendant Dr. McLemore. Plaintiff further alleged that Dr. McLemore told Plaintiff that he would follow up on Plaintiff's request for stronger pain medication, but failed to follow up. (*Id.*). On May 2, 2010, June 1, 2010, and June 3, 2010, Plaintiff submitted additional HSR forms. He alleges that he was seen by Defendant Nurse Adkins in June 2010 but received no satisfactory response. (*Id.* at 18). He alleges that he turned in additional HSR forms in September 2010 and on October 8, 2010. (*Id.* at 19).

On November 3, 2010, Plaintiff was examined by Defendant Nurse Joiner due to his involvement in a Use of Force incident involving pepper spray. (*Id.* at 22). On January 26, 2011, Plaintiff alleges that he was again seen by an unidentified physician who prescribed unidentified "medication." (*Id.* at 23).

### B. Summary Judgment Standard and Plaintiff's Exhibits

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-49.  The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party.  *Id.* at 252.

Both as exhibits to his original complaint, and in response to Defendants' motion for summary judgment, Plaintiff has attached documents that are not properly authenticated under Fed. R. Civ. P. 56(c) or (e), or alternatively under Fed. Rules of Evid. 901 or 902.  Defendant urges this Court not to consider any of the exhibits, because they are not a form that would be admissible at trial, and there is no evidence to suggest that they could be presented in a form that would be admissible at trial.  Under Rule 56(c)(1), a party opposing summary judgment on grounds that a genuine issue of material fact exists must be able to cite to "particular parts of materials in the record."  The cited "record" permits consideration of affidavits or declarations, but it must be clear that admissible evidence exists to establish a genuine issue of material fact.  *See* Rule 56(c)(4).  Thus, the party seeking summary judgment may challenge the existence of a genuine issue of material fact on grounds that "the material cited to support or dispute a fact *cannot* be presented in a form that would be admissible in evidence."  Rule 56(c)(2)(emphasis added).

6

In this case, Defendants argue that this Court should not consider Plaintiff's unauthenticated exhibits and/or any assertions that are not supported by, at the very least, an affidavit. *See United States v. Brown*, 7 Fed. Appx. 353, 354 (6th Cir., March 19, 2001)(affirming summary judgment where pro se litigant offered relevant factual allegations but "did not file an affidavit to this effect…."); *see also Chappell v. City of Cleveland,* 585 F.3d 901, 906 (6th Cir. 2009)(holding that a court need not credit a non-movant's unsupported assertion of a disputed fact if the allegation is "utterly discredited by the record"). Defendants describe several of Plaintiff's exhibits as "problematic." For example, Defendants state that "it is unclear" how Inmate Dearing could have submitted the HSR or kite forms to any of the various Defendants and still have a copy to attach to his complaint, since the institutional forms are single sheets without carbonless paper copies. Defendants suggest that it is "entirely possible that [Plaintiff] simply created the proffered exhibits after the fact and attached them to his Complaint and never submitted them in the first instance," since Plaintiff's medical records "do not include these HSR's that he has marked and attached as Exhibits." (Doc. 90 at 15).

Defendants' objections to the exhibits proffered by Plaintiff are well-taken. However, Rule 56(e)(1) allows that when a disputed issue is challenged as not properly supported, a court "may…give an opportunity to properly support or address the fact." On the record presented, the Court concludes that even if Plaintiff could properly authenticate the challenged exhibits, the Defendants still would be entitled to summary judgment.

### C. Official Capacity Claims Barred by Eleventh Amendment

As Defendants note, Plaintiff names all Defendants in both their official and

individual capacities. All six individual Defendants persuasively argue that Plaintiff's claims against them for monetary damages in their official capacities are barred by the Eleventh Amendment. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989*); Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). The undersigned therefore will recommend the dismissal of all claims for monetary damages, to the extent that those claims have been filed against Defendants in their official capacities.

### D. Individual Capacity Claims

As discussed below, Defendants McLemore and Clagg are entitled to judgment as a matter of law based upon Plaintiff's failure to show the personal involvement of either individual in the alleged Eighth Amendment violation. The remaining four Defendants are all entitled to summary judgment based upon the additional failure of Plaintiff to show the elements of an Eighth Amendment violation.[3]

### 1. Defendant Dr. McLemore

Plaintiff alleges in his complaint that Dr. McLemore was a treating physician at SOCF who took x-rays of Plaintiff's neck, and promised to provide Plaintiff with stronger pain medications. However, Defendants have submitted evidence with their motion for summary judgment that demonstrates that Dr. McLemore is not employed by SOCF but instead is a physician with a private radiology group that contracts with SOCF.[4] Thus, record evidence reflects that the only involvement of Dr. McLemore was as a radiologist charged with the contractual responsibility to read, interpret, and generate a written report of findings following his review of Plaintiff's x-rays on or about April 5, 2010.

---

[3]Defendants McLemore and Clagg would also be entitled to judgment on this basis, even if Plaintiff had offered evidence of their personal involvement.
[4]Both that fact and the various spellings of his name by Plaintiff resulted in a lengthy delay before he could be served at his private place of employment.

Specifically, Dr. McLemore has submitted an affidavit confirming his prior employment with Mid-Ohio Radiology, not SOCF.  During the relevant time period, Mid-Ohio Radiology provided contractual services to SOCF and other correctional institutions in Ohio.   An x-ray was taken of Plaintiff's neck in April 2010 by an unidentified technician at SOCF, and was thereafter transmitted to Mid-Ohio Radiology for reading and interpretation.  In his employ for Mid-Ohio Radiology, Dr. McLemore interpreted Plaintiff's x-ray and generated a written report.  Contrary to the allegations in the complaint, Dr. McLemore did not travel to SOCF, never spoke with Plaintiff, and did not recommend any treatment of Plaintiff's alleged chronic pain.  (Doc. 90-1 at 1-3; Doc. 90-2, responses to written interrogatories).

Plaintiff argues that Defense counsel initially denied the existence of Dr. McLemore, implying that Defendant's evidence not worthy of belief.  However, the record reflects an adequate explanation for the confusion – both the misspelling of the Defendant's name (indeed, "Dr. LeMore" does not appear to exist) and his misidentification by Plaintiff as an SOCF employee.  Plaintiff continues to question how Dr. McLemore could deny a physical presence at SOCF when the x-ray report bears his signature.  He urges this Court to deny Defendant's motion or at least stay dismissal until Plaintiff obtains the identity of the physician who examined him and took his x-ray(s) on or about April 10, 2010.  (Doc. 93 at 8).

Defendant Dr. McLemore is entitled to judgment as a matter of law based upon Plaintiff's failure to submit any evidence contrary to the evidence submitted by that Defendant, which conclusively shows that he took no personal action that either objectively or subjectively could be viewed as violative of the Eighth Amendment.

Plaintiff's continued misunderstanding of the evidence submitted by Defendant McLemore on summary judgment does not alter the strength of that evidence.  Plaintiff is not entitled to reopen discovery to obtain the name(s) of additional providers and/or potential John Doe Defendants who may have treated him during the same time frame.[5]

### 2.  Defendant Health Care Administrator Clagg

Plaintiff's sole factual allegation against SOCF Health Care Administrator Clagg is that, after he made complaints to Defendant Clagg about his medical care, Defendant Clagg responded in writing:  "I will speak to Nurse Durham regarding this I.C.R. Follow-up with medical as needed."  (Doc. 9 at 21). Plaintiff generally complains that Defendant Clagg failed to turn in his complaint forms, and/or failed to properly investigate his claims of inadequate medical care.  Since §1983 does not provide any substantive rights to an effective grievance procedure or for a failure to investigate, Defendant Clagg is entitled to dismissal of all claims against her in her individual capacity.

In his response to Defendants' motion, Plaintiff continues to complain that Defendant Clagg did not properly investigate and/or respond to his grievances concerning the adequacy of his medical care, citing specific complaints filed on March 10 and May 18, 2009, and Defendant Clagg's responses, which direct him to follow up with his "zone nurse for re-evaluation" – a response that Plaintiff terms a "blow off." (Doc. 93 at 23, 48-49; see also 93-1 at 5, Informal Complaint Resolution).  Plaintiff argues that Clagg should be held liable because she retained "the authority to make proper recommendations…[concerning] the care and treatment of inmates," in her role

---

[5]Plaintiff's complaint contains allegations concerning several medical providers, including a "Dr. Boutista" and a "Dr. Simon," who were never named as defendants or served with process.  It would be unfairly prejudicial to Defendants to permit Plaintiff to amend his complaint at this stage.

as "health care supervisor."  (*Id.* at 49).

Contrary to Plaintiff's belief, Clagg cannot be held liable under a *respondeat superior* theory for her role as the health care supervisor.  Plaintiff argues that Defendant Clagg should be held liable based upon her "knowing acquiescence in the unconstitutional behavior of subordinates persistently violating a statutory duty to inquire about such behavior and to be responsible for preventing it."  (Doc. 93 at 56-57).  *See generally, Hill v. Marshall,* 962 F.2d 1209, 1214 (6th Cir. 1992).  However, *Hill* is easily distinguished.  Merely asserting that Defendant Clagg should be held personally responsible is not sufficient to elevate the claim against Clagg beyond that of *respondeat superior* on the facts presented.  She is entitled to judgment as a matter of law.

### 3.  Defendants Durham, Penron, Joiner, and Adkins

The essence of Plaintiff's claims is that he was not provided unfettered access to a physician when he requested to be seen, and that he was not prescribed adequate pain medication for his chronic neck pain.  While Defendants deny Plaintiff's basic allegations, they argue that at most, Plaintiff has stated a claim for negligence that falls short of the showing required to state a claim of deliberate indifference to a serious medical need.

Plaintiff argues that there "is a thin line between what constitutes deliberate indifference, and negligence, or malpractice."  (Doc. 93 at 55).  However, the line between a constitutional claim and mere negligence is fairly well established.  Proof of deliberate indifference under the Eighth Amendment includes separate objective and subjective components, with a standard that exceeds gross negligence and has been

11

described as akin to "criminal recklessness." *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003).

With respect to the objective component, Plaintiff must prove that the alleged deprivation of medical care is "objectively, sufficiently serious," such that he was denied "the minimal civilized measure of life's necessities." *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994). The failure to provide care or the delay in care must have exposed Plaintiff to a "substantial risk of serious harm." *Id.* at 828. Second, to prove the subjective element of his claim, Plaintiff must show that the prison officials actually knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.,* 511 U.S. at 837.

In order to prove his claim, then, Plaintiff must show that each of the Defendants was aware of facts from which he or she could draw the inference that a substantial risk of serious harm existed, and that he or she actually drew that inference. Plaintiff must prove both elements of his claim by a preponderance of the evidence. *Brooks v. Celeste*, 39 F.3d 125, 127-128 (6th Cir. 1994). In this case, all Defendants are entitled to summary judgment based upon Defendants' demonstration that Plaintiff cannot prove either the objective or subjective components of a constitutional violation, as opposed to a mere claim for negligence or malpractice.

### a.  Failure to show Objective Component

Plaintiff argues that the objective component of his claim is demonstrated by the fact that he suffers chronic neck pain. The Court takes judicial notice of the fact that

12

chronic pain is an extremely common problem, not just in the prison population, but in the U.S. population at large.  News reports frequently cite the percentage of Americans who suffer from chronic pain as exceeding 30%.  A more conservative estimate by the National Center for Complementary and Alternative Medicine, a division of the National Institutes of Health, cites evidence that 26 percent of adults experience chronic pain, defined as pain lasting than 12 weeks. *See* http://nccam.nih.gov/health/pain/chronic.htm (accessed on September 12, 2013).  Back and neck pain are the most common types of chronic pain.  According to the same article, such pain is frequently resistant to traditional treatments such as medications, causing sufferers to seek alternative remedies such as dietary changes, acupuncture, massage, physical therapy, exercise, spinal manipulation, yoga, etc.  *Id.*  An issue of another NIH publication, Medline Plus, explains that although more than 76 million Americans suffer from chronic pain, "almost half of them receive no treatment." See http://www.nlm.nih.gov/medlineplus/magazine/. (Spring 2011, Vol. 6, Number 1, page 4).  These facts: (1) the high levels of chronic pain in the general population; (2) that nearly half of sufferers receive *no* treatment; and (3) the frequent resistance of symptoms to traditional medical treatments, provide some context for Plaintiff's claims in this case.

The Sixth Circuit defines an "objectively serious" medical condition as "one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 897 (6th Cir. 2004)(fact issues precluded summary judgment on claim that officers failed to provide prompt medical treatment for acute appendicitis of pretrial detainee, who was vomiting and complaining

13

vociferously of acute abdominal pain for two days prior to treatment)(internal quotation marks and citations omitted).  The latter "obvious" category of claim is generally limited to those claims that involve a need "for immediate or emergency medical attention," involving "life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem," such as the acute appendicitis symptoms at issue in *Blackmore*.  *Id.* (quoting *Hill v. Dekalb Reg'l Youth Det. Center*, 40 F.3d 1176, 1187-88 (11th Cir. 1994)).  The "obviousness" standard for determining a serious medical need is clearly distinguishable from the facts presented here.

Rather than the type of acute symptoms that a fracture or appendicitis might present, this case involves ongoing complaints of chronic pain from a seventeen-year-old gunshot wound.  The fact that Plaintiff's chronic neck pain originated from a more acute injury (his pre-incarceration gunshot wound) does not transform that chronic pain itself into an "obvious" or life-threatening acute medical event.  *Contrast, Boretti v. Wiscombs*, 930 F.2d 1150 (6th Cir. 1991)(inmate who alleged denial of prescribed treatment for red, swollen and draining surgical wound following gunshot, stated claim for deliberate indifference, because wanton interruption of a prescribed plan of treatment can violate Eighth Amendment).  While the Court can conceive of cases in which chronic pain rises to the level of "obviousness" in terms of the need for immediate medical attention,[6] on the record presented Plaintiff's symptoms were not so severe as to demonstrate any type of "obvious" need for emergency-type care, but instead fall

---

[6]For example, someone suffering from chronic pain syndrome who is being treated with narcotics through an implanted pain pump might demonstrate an "obvious" need for immediate medical attention if that medication is withheld, as might someone who has submitted evidence of very serious symptoms, such as significant weight loss, vomiting, or other significant impact on daily activities. The experience of pain is by definition a subjective one.  Thus, unsupported allegations that an inmate suffers from severe chronic pain that interferes with daily activities is not sufficient to show "obviousness," absent corroborating evidence that suggests a need for immediate medical attention.

under the separate branch of Eighth Amendment jurisprudence "where the seriousness of a prisoner's medical needs 'may *also* be decided by the *effect* of delay in treatment.'" *Id.,* 390 F.3d at 897 (emphasis original, citation omitted).

As noted in *Blackmore*, to demonstrate this second category of "serious medical need," a prisoner must demonstrate that a "delay in treatment…caused injury, loss, or handicap." *Id.* Such claims typically include delayed or missed doses of medication, or "claims based on a determination by medical personnel that medical treatment was unnecessary," and involve determinations of whether a prisoner was treated adequately, whether any delay was harmless, or whether the prisoner had a "very minor injury for which many people outside prison would not even think of seeking medical treatment." *Id.,* at 897-898 (collecting cases). The Sixth Circuit has adopted a "practical and logical" approach to such claims, holding that '[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Id.* at 898, quoting *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001)(additional quotation omitted).

Plaintiff's claim, based on the prison's alleged failure to adequately treat his chronic neck pain, clearly fails under the *Napier* standard. "In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury." *Blackmore*, 390 F.3d at 898, citing *Napier*, 238 F.3d at 742. Defendants are entitled to summary judgment in part because the record reflects that no such "verifying medical evidence" exists, meaning that Plaintiff cannot prove the objective component of his case. *Accord Harrell v. Grainger County, Tenn.*, 391 Fed. Appx. 519, 524 (6th

Cir. 2010)(exacerbation of prior back injury evaluated under *Napier* standard, affirming summary judgment because failing to dispense medication and "dispensing ibuprofen to Plaintiff two times in six days may have been deficient to adequately alleviate Plaintiff's pain…[but] does not rise to the level of exacerbating an objectively obvious injury."); *Lane v. Wexford Health Sources*, 2011 WL 1897448 (S.D. Ohio, May 18, 2011)(granting summary judgment to Defendants on claim that prison medical staff failed to adequately treat exacerbation of chronic pain from gunshot wound, based on inmate's failure to submit medical evidence to establish the detrimental effect of the alleged delay in treatment, R&R adopted at 2011 WL 3584331).

This conclusion is bolstered by a review of similar cases. Time and time again, courts have determined that similar claims simply do not rise to the level of an Eighth Amendment violation.  Perhaps not surprisingly, disputes about the amount and kind of pain medications prescribed by prison doctors are relatively common.  However, courts have made clear that there is no constitutional right to receive narcotic pain medication, nor is there a right to receive unlimited pain medication for an indefinite period of time. *See e.g., Israfil v. Woods*, 2011 WL 8006371 (S.D. Ohio, Dec. 7, 2011), Case No. 09-cv-468 (R&R adopted at 2012 WL 2133539,dismissing claims for allegedly inadequate treatment of chronic back pain); *Wolfel v. Farley-Morford*, 2009 WL 4547561 (S.D. Ohio December 1, 2009)(inmate complaining of discontinuation of Ultram in favor of Celebrex for back pain failed to state claim); *see also Reed v. Sapp*, 211 F.3d 1270, 2000 WL 571994 (6th Cir. 2000)(Table, text available in Westlaw)(inmate who believed he required more aggressive treatment for chronic back pain failed to show health threat in violation of Eighth Amendment, rather than mere discomfort or disagreement with

16

medical opinion); *Aladimi v. Jones*, No. 1:08-cv-810, 2012 U.S. Dist LEXIS 71055 (S.D. Ohio June 21, 2010)(no objective component demonstrated based on argument that prison doctors should have prescribed pain medication absent medical evidence of serious medical need); *Jones v. Ehlert*, 704 F. Supp. 885, 888-890 (E.D. Wis. 1989)(no deliberate indifference found where prisoner's Valium was discontinued after prisoner accused of palming medication).

The issue of medication choice is nearly always an issue of medical judgment, which fails to rise to the level of a constitutional violation. Where an inmate has received medical attention, and merely disputes the adequacy of that treatment, federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. *See Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)(differences in judgment between an inmate and prison medical personnel regarding appropriate medical treatment are not enough to state a deliberate indifference claim). This Court's conclusion that Plaintiff has failed to establish the objective component of his claim, due to the lack of showing of an objectively "serious medical need," is not intended as a denial of the pain that Plaintiff alleges that he experienced, but rather, merely the "practical and logical" reality that Plaintiff has put forth no medical evidence that he suffered from an objectively serious harm from the alleged delay and/or periodic denial of treatment.[7]

In short, as is evident on the record presented, cases challenging the adequacy of pain management usually state, at most, claims for negligence. *Id.*, s*ee also*

---

[7]To the extent that Plaintiff complains of the period of time in which he was not prescribed any medication, the objective component of Plaintiff's claim also is undercut by allegations that prescribed medications were ineffective. (*See also* Docs. 90-15, 90-16, 90-19, 90-20, 90-24 (medical records).

*generally Buck v. Harwood*, 2007 WL 634447 (N.D. Ohio Feb. 22, 2007)(where there was no objective evidence to support Plaintiff's belief that screws in his ankle were broken, and Plaintiff failed to present any evidence to establish that Defendant's treatment of his chronic pain constituted an excessive risk to the inmate's health or safety, institutional physician entitled to summary judgment). Critical to the failure of the "objective component" in this case is the fact that other than his own unsubstantiated allegations, Plaintiff has failed to submit any competent medical evidence that any harm resulted. Courts reviewing far more serious allegations of medical negligence have found no violation of the Eighth Amendment when no serious harm resulted. *Compare Napier v. Madison County*, 238 F.3d at 742 (no evidence that harm resulted from missed dialysis treatment). In fact, Plaintiff has failed to provide medical evidence concerning his condition dating back to 1991, but most particularly, evidence that his treatment or symptoms changed in any way during the time frame in which he asserts an Eighth Amendment claim against the referenced Defendants.

### b. Subjective Component of Claim

In addition to his failure to prove the objective component of his claim, Plaintiff has failed to prove the subjective component. Plaintiff must show that each of the named Defendants consciously disregarded his serious medical need. The subjective component exists "to prevent the constitutionalization of medical malpractice claims." *Cornstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). "[A]n official's failure to alleviate a significant risk that *he should have perceived but did not*, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* (emphasis added, quoting *Farmer*, 511 U.S. at 838). None of Plaintiff's allegations

18

against Defendants Durham, Penron, Joiner, and Adkins satisfy the standard required to prove the subjective element of an Eighth Amendment claim.[8]  At the very most, Plaintiff's allegations against the referenced Defendants reflect behavior akin to negligence.   There is no evidence that any of the Defendant nurses, in failing to promptly respond to Plaintiff's requests for additional attention, were aware of any significant risk to Plaintiff that could result from their alleged inattention.  "[A] complaint that a physician [or nurse] has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Moreover, Defendants have offered evidence confirming that Plaintiff has received a significant amount of medical attention in response to his requests and complaints.  Specifically, Ohio State Penitentiary Health Care Administrator ("HCA") Mary Lapushansky has authenticated documents from Plaintiff's medical file during the relevant time period of his complaint. Those records reflect examinations[9] on November 10, 2008, December 8, 2008, January 2, 2009, June 23, 2009, July 2, 2009, October 8, 2009, November 17, 2009, January 26, 2010, April 1, 2010, July 15, 2010, September 2, 2010, November 3, 2010, December 6, 2010, December 23, 2010, December 31, 2010, January 19, 2011, January 26, 2011, and March 14, 2011.  On five of those occasions, Plaintiff was examined and/or treated for complaints unrelated to his chronic neck pain; on other occasions, Plaintiff did not mention any complaints of neck pain.

---

[8]Similar to Defendants McLemore and Clagg, few allegations implicate Defendants Penron or Joiner at all.
[9]On two dates, December 23, 2010 and January 10, 2011, Plaintiff's records reflect some ambiguity as to whether Plaintiff was physically examined, or whether medical personnel only reviewed his records.

(*See* Docs 90-4, Affidavit and Defendants' Exhibits D-3, D-7, D-9, D-10, D-12, D-13, D-16, D-18, D-19, D-22, D-23, D-24, D-25, D-31). On just one occasion, Plaintiff sought treatment for a different complaint but complained of chronic neck pain during his examination. (Doc. 90-25, Exhibit D-21). Additional medical records submitted by Defendants include three sets of x-rays performed on Plaintiff's neck, including x-rays taken prior to November 10, 2008, x-rays dated June 24, 2009, and a third set dated April 1, 2010. Three documents reflect prescriptions for nonsteroidal anti-inflammatory drugs ("NSAID") to treat Plaintiff's reported pain, including ibuprofen (Motrin), Mabumetone (Relafen), and Naproxen.

Last, Nurse Practitioner Charles Adkins avers that Plaintiff was appropriately treated given the nature of his complaints and documentation of his pain complaints. Defendant Adkins also explains why more aggressive prescription or narcotic drugs for pain relief were not prescribed to Plaintiff given the particular facts and circumstances of his complaints, including physical examination and x-ray images. (Doc. 90-3).

Plaintiff acknowledges that he "has been examined on numerous occasions, [and] had plenty of x-rays done on his neck." (Doc. 93 at 10). However, he continues to dispute the adequacy of his care, including the "delays" and "run a rounds [sic]" in obtaining adequate care. (Doc. 93 at 10). Not surprisingly, Plaintiff strongly disagrees with Defendant Adkins's representations concerning the sufficiency of his care. Again, however, Plaintiff's disagreement with Defendants' medical decisions cannot give rise to an Eighth Amendment claim.

### III. Conclusion and Recommendation

For all the reasons discussed herein, **IT IS RECOMMENDED THAT** Defendants'

motion for summary judgment (Doc. 90) be **GRANTED**, that all claims be dismissed, and that this case be closed.

_s/ Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MARVIN DEARING,                                                    Case No. 1:11-cv-204

           Plaintiff,                                                    Barrett, J.
                                                                  Bowman, M.J.

    v.

INSTITUTIONAL INSPECTOR MAHALMA, et al.,

           Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN  (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).